**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38699**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 64 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 7, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KEVIN LOUIS ORMESHER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for sexual abuse of a child under the age of sixteen years, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Kevin Louis Ormesher appeals from his judgment of conviction entered upon a jury verdict finding him guilty of sexual abuse of a child under the age of sixteen years. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

After meeting fifteen-year-old A.R. at a wedding and obtaining her phone number, Ormesher texted her several days later to arrange a meeting. At about 9:30 one evening, A.R. sneaked out of her father's house and waited on a street corner until Ormesher came to pick her up. A.R. began drinking from a bottle of tequila and Ormesher drove to a trailhead and parked. A.R. became increasingly intoxicated. According to A.R., Ormesher began kissing her, touching her breasts underneath her bra, and touching her legs.

1

An officer on regular patrol came upon the two and observed that A.R.'s shirt and bra were off and her bra was on the floor of the vehicle. He also observed that A.R. was extremely intoxicated and incoherent.

Ormesher was charged with sexual abuse of a child under the age of sixteen years and dispensing alcohol to a minor, the latter of which was dismissed prior to trial. Following a jury trial, Ormesher was found guilty of sexual abuse of a child under the age of sixteen years. Idaho Code § 18-1506. He now appeals.

## II.

## ANALYSIS

Ormesher contends there was a fatal variance between the information and the elements jury instruction as to the sexual abuse of a child charge, which allowed the jury to find Ormesher guilty based on acts not specifically included in the information. He also contends the district court erred by allowing the State to introduce evidence of Ormesher's prior convictions for stalking and violating a no-contact order on cross-examination of Ormesher's character witness.

### A.    Variance

Ormesher argues a fatal variance existed between the information, which alleged Ormesher committed sexual abuse of a child by touching A.R.'s breasts, and the elements jury instruction, which contained no such limitation and allowed the jury to find Ormesher guilty based on any act of sexual contact. A variance may occur where there is a difference between the allegations in the charging instrument and the proof adduced at trial or where there is a disparity between the allegations in the charging instrument and the jury instructions. *State v. Montoya*, 140 Idaho 160, 165, 90 P.3d 910, 915 (Ct. App. 2004). The existence of a variance may constitute a due process violation if it deprives a defendant of fair notice of the charges against him. *Id*. The existence of an impermissible variance is a question of law over which we exercise free review. *State v. Alvarez*, 138 Idaho 747, 750, 69 P.3d 167, 170 (Ct. App. 2003); *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998).

If it is established that a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *State v. Brazil*, 136 Idaho 327, 330, 33 P.3d 218, 221 (Ct. App. 2001). A determination of whether a variance is fatal depends on whether the basic functions of the pleading requirement have been met. *State v. Windsor*, 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. A

charging instrument meets the basic functions of the pleading requirement if it fairly informs the defendant of the charges against which he or she must defend and enables him or her to plead an acquittal or conviction in bar of future prosecutions for the same offense. *United States v. Bailey*, 444 U.S. 394, 395 (1980); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. A variance is fatal if it amounts to a "constructive amendment." *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *Id.*; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). In sum, a variance between a charging document and a jury instruction or the evidence adduced at trial requires reversal only when it deprives the defendant of his substantial rights by violating the defendant's right to fair notice or leaving him or her open to the risk of double jeopardy. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Brazil*, 136 Idaho at 330, 33 P.3d at 221; *Sherrod*, 131 Idaho at 59, 951 P.2d at 1286.

Regarding the sexual abuse charge, the information specifically alleged:

> That the Defendant, KEVIN LOUIS ORMESHER, over the age of eighteen, to-wit: 25 years of age, on or about the 27th day of July, 2010, in the County of Kootenai, State of Idaho, did have sexual contact with A.R., a child under the age of sixteen, to-wit: 15 years old, *by touching the breast of said child with the intent to gratify the sexual desire of the Defendant.*

(Emphasis added.) However, the elements jury instruction pertaining to the sexual abuse charge omitted any reference to the touching of the victim's breasts:

> In order for the defendant, KEVIN LOUIS ORMESHER, to be guilty of Sexual Abuse of a Child Under the Age of Sixteen Years, as charged, the state must prove each of the following:
> 1. On or about the 27th day of July, 2010;
> 2. in the State of Idaho;
> 3. the defendant, KEVIN LOUIS ORMESHER, had *sexual contact* with A.R. not amounting to lewd conduct;
> 4. the defendant, KEVIN LOUIS ORMESHER, was eighteen (18) years of age or older;
> 5. A.R. was under sixteen (16) years of age, and;
> 6. the defendant, KEVIN LOUIS ORMESHER, committed such an act with the specific intent to gratify the sexual desire of the defendant.

(Emphasis added.) A separate instruction defined "sexual contact" as "any physical contact between the child and any person which is caused by the actor, or the actor causing the child to have self contact."

3

On appeal, Ormesher contends there is a fatal variance because the elements instruction allowed the jury to find he was guilty of the sexual abuse of a child charge even if it did not find he touched A.R.'s breast as alleged in the information. We agree that the jury instruction was not consistent with the charge as contained in the information and constituted a variance. *See Brazil*, 136 Idaho at 330, 33 P.3d at 221 (finding a variance where the jury instructions allowed the jury to find Brazil caused "great bodily harm" based on any of the injuries suffered by the victim, while the charging document limited the allegations to two specific injuries). Thus, we turn to the question of whether the variance is fatal.

Ormesher argues on appeal that the variance both leaves him open to the risk of double jeopardy and deprived him of fair notice by misleading or embarrassing him in the preparation or presentation of his defense. As to the former consideration, Ormesher contends, "By not requiring the jury to make a conclusion on the manner in which Mr. Ormesher committed the crime, the court left Mr. Ormesher open to the risk of double jeopardy because it is not clear what specific act Mr. Ormesher was convicted of." However, as the State points out, it is unlikely Ormesher could be tried for separate counts of sexual abuse of a child under sixteen for separate acts (kissing and touching her legs and/or breasts) given that those acts occurred as part of a single course of conduct, all while the two were in Ormesher's vehicle. *See Jones*, 140 Idaho at 48, 89 P.3d at 888 (explaining that a series of sexual contacts that occur as part of a *single incident* constitutes only *one count* of lewd conduct). In addition, given the nature of the evidence proved at trial, Ormesher has not shown us why he could not successfully plead double jeopardy against reprosecution when and if a second information is filed. *See State v. Marks*, 120 Idaho 727, 730, 819 P.2d 581, 584 (Ct. App. 1991) (rejecting the defendant's assertion that he faced the possibility of double jeopardy where there was a one-month variance between the dates of the crime as stated in the information and the proof established at trial).[1]

Ormesher also contends he was denied "fair notice" because the charging document placed him on notice he had to defend against the allegation he touched A.R.'s breast, but the jury instruction required him to defend against an allegation he touched the victim *at all* with the

---

[1] Our appellate courts have noted that protection against future double jeopardy is no longer the concern it once was because the availability of trial transcripts allows for a more thorough, subsequent determination of exactly what was before a court in a prior prosecution. *State v. Windsor*, 110 Idaho 410, 418 n.1, 716 P.2d 1182, 1190 n.1 (1985); *State v. Montoya*, 140 Idaho 160, 165 n.6, 90 P.3d 910, 915 n.6 (Ct. App. 2004).

intent to gratify his sexual desire. Ormesher has not shown he was misled or embarrassed in the preparation of his defense, however, because his defense at trial, which he testified to, was that he did not kiss the victim, "touch a private part of her body," or "fondle" her while they were in the vehicle. Thus, Ormesher's defense was not thwarted, but he in fact did offer a defense to any allegations of kissing and/or touching of a sexual nature. *See State v. Hickman*, 146 Idaho 178, 182, 191 P.3d 1098, 1102 (2008) (holding the defendant was not misled or embarrassed in the presentation of his defense by a variance between the charging document and jury instructions where it did not implicate his actual defense at trial). Accordingly, although we find a variance existed, we conclude it was not fatal.

**B.      Use of Prior Convictions**

Ormesher also contends the district court erred in allowing the State to ask Ormesher's uncle, who testified as to Ormesher's character, about Ormesher's prior convictions for stalking and violating a no-contact order. Specifically, Ormesher contends the district court erred in finding these prior convictions were relevant to Ormesher's "truthfulness" because they did not implicate deceit and, therefore, the district court erred in permitting the State to utilize this evidence in cross-examination of Ormesher's uncle.

The trial court has broad discretion as to the admission of evidence, and its judgment will be reversed only where there has been a clear abuse of discretion. *State v. Perry*, 150 Idaho 209, 218, 245 P.2d 961, 970 (2010). Although character evidence is ordinarily inadmissible for the purpose of showing an individual acted in conformity therewith, a criminal defendant may offer evidence of a pertinent character trait, provided the prosecution is afforded an opportunity to rebut the same. Idaho Rule of Evidence 404(a)(1); *State v. Harvey*, 142 Idaho 527, 533, 129 P.3d 1276, 1282 (Ct. App. 2006). Idaho Rule of Evidence 405 provides that character evidence may usually be admitted only as testimony in the form of an opinion or testimony as to reputation, but on cross-examination, a party may inquire about relevant *specific instances* of conduct.

During Ormesher's case-in-chief, he called his uncle to the stand, who was asked whether he had an opinion "as to whether [Ormesher] is a *moral* person." (Emphasis added.) Ormesher's uncle responded:

> Absolutely. I trust him--I'm semi-reclusive, and he's one of the only
> people I would trust in my home when I take vacations. I trust him to watch my
> cats. I trust him with everything. We go on jobs for some pretty high-end

5

clientele. Uh, I trust him in their offices, in their homes, and they trust him, also. He doesn't pry into things. He's just trustworthy.

Outside the presence of the jury, the prosecutor advised the district court he intended on cross-examination to ask Ormesher's uncle whether his opinion that Ormesher is moral and trustworthy "would . . . change knowing he has been convicted of first degree stalking . . . in 2007" and of a "no contact order violation in 2009." Ormesher's defense counsel objected on the grounds that evidence of the prior convictions was not relevant to credibility and was more prejudicial than probative. The district court ruled the prosecutor could raise the issue of Ormesher's prior convictions:

> Well, I think both of these offenses are probative as to the issue of honesty of the defendant and [Ormesher's uncle's] knowledge regarding his opinion that he's already stated as to the trustworthiness and honesty of the defendant. Really the testimony is all about trust, and so I think both of these offenses really go directly to trust, so for purposes of impeachment I think they're highly probative, highly relevant.

The court surmised:

> I think if the questions would've been posed of this witness in terms of honesty, which is ordinarily what's allowed under the rule rather than trustworthiness, I think we'd have a whole different issue here, but my notes show nothing but trusted in my home, trusted in client's home, I trust him, he's trustworthy.

On cross-examination, the prosecutor asked Ormesher's uncle whether he was aware of Ormesher's prior convictions, to which the uncle answered "yes" and testified neither conviction changed his opinion of Ormesher.

Ormesher's sole focus on whether the prior convictions implicated his "truthfulness" is somewhat inexplicable. The record is clear his uncle testified as to his opinion that Ormesher is "moral" and "trustworthy." Although morality and trustworthiness may encompass honesty, common sense dictates they are not confined to that single quality. Further, although the district court did mention honesty at the outset of its ruling, it is clear from the context of the entire ruling that the district court viewed the character opinion as pertaining largely to trustworthiness, even going so far as to indicate the outcome may have been different had the opinion been offered as to Ormesher's honesty. Thus, we turn to the issue of whether the prior convictions were relevant to the uncle's opinions as to Ormesher's morality and trustworthiness.

We addressed an analogous issue in *Harvey*, 142 Idaho 527, 129 P.3d 1276, where the defendant was charged with sexual abuse of a child under sixteen and indecent exposure. At

6

trial, character witnesses testified as to Harvey's "good character when dealing with or being around children." *Id*. at 532, 129 P.3d at 1281. The prosecutor rebutted the testimony by cross-examining the witnesses about evidence of Harvey's three prior convictions for battery, domestic violence, and disturbing the peace. *Id*. On appeal, this Court concluded opinion evidence regarding Harvey's good character around children could be rebutted by evidence that he had previously been found guilty of battery and domestic violence crimes not involving children:

> It would be reasonable for a person to be hesitant to allow children to be cared for or influenced by an individual with a history of violent crimes of any type. Just as Harvey offered opinion evidence of his good character around children, the district court properly allowed the state to introduce evidence that would make a reasonable person doubt his or her opinion of the good character attested to. Therefore, we conclude the ruling of the district court, regarding the admissibility of Harvey's battery and domestic battery crimes, is soundly reasoned and well within the boundaries of its discretion.

*Id*. at 533, 129 P.3d at 1282. On the other hand, we concluded it was erroneous to allow Harvey's conviction for disturbing the peace to be utilized to rebut the character evidence presented because such a crime includes a broad range of conduct and is not the sort of crime reasonable people would conclude negatively impacts a person's fitness to be around children. *Id*.

Likewise in this case, we conclude the district court did not err in finding the uncle's opinion, that Ormesher was a "moral" person and was "trustworthy," could be rebutted by evidence that Ormesher had prior convictions for stalking and violating a no-contact order. Ormesher's uncle testified he employed Ormesher at his music company and that Ormesher did "audio work for me from disc jockeying to sound reinforcement." The uncle then testified that not only did he trust Ormesher to take care of his home and pets, but that he and his clients trusted Ormesher in their homes and offices in performance of his job. Where Ormesher's previous convictions were for engaging in unwanted and/or illegal contact with another person,[2]

---

[2] Ormesher points out the State represented he was convicted of misdemeanor stalking in Nevada, which currently has the following definition of stalking:

> A person who, without lawful authority, willfully or maliciously engages in a course of conduct that would cause a reasonable person to feel *terrorized, frightened, intimidated, harassed or fearful* for the immediate safety of a family or household member, and that actually causes the victim to feel terrorized,

such evidence certainly would make a reasonable person doubt the uncle's unequivocal opinion that Ormesher was "moral," as well as "trustworthy" enough to engage in professional interpersonal interactions in clients' homes and businesses. Therefore, we conclude the ruling of the district court, regarding the admissibility of Ormesher's prior crimes, is soundly reasoned and well within the boundaries of its discretion.

## III.

## CONCLUSION

Although there existed a variance between the information and the jury instruction as to sexual abuse of a child, it was not fatal because it did not leave Ormesher open to the risk of double jeopardy or deprive him of fair notice in the preparation of his defense. We also conclude the district court did not err in allowing the State to introduce evidence of Ormesher's prior convictions on cross-examination of Ormesher's character witness because the prior convictions were relevant to the witness's opinion that Ormesher is moral and trustworthy. Ormesher's judgment of conviction for sexual abuse of a child under the age of sixteen years is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

frightened, intimidated, harassed or fearful for the immediate safety of a family or household member, commits the crime of stalking.

NEV. REV. STAT. § 200.575 (2009) (emphasis added).