**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44688**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 19, 2018** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ISRAEL FULTON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Jefferson County. Hon. Alan C. Stephens, District Judge.

Judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age, <u>vacated</u> and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant. Elizabeth A. Allred argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

---

GUTIERREZ, Judge

Israel Fulton appeals from his judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age. Fulton argues there was a fatal variance between the charging document and three jury instructions; the court erred in instructing the jury; the prosecutor committed misconduct on multiple occasions; Fulton's right to due process was violated first, when the jury returned a verdict on a crime for which he had not been charged and second, when the district court entered a judgment of conviction for a crime he had not been found guilty of; and the district court erred in informing the jury that Fulton was charged with a felony. For the reasons provided below, we vacate Fulton's judgment of conviction for sexual battery of a minor child sixteen or seventeen years of age and remand the case.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Fulton, by information, with sexual battery of a minor child sixteen or seventeen years of age, Idaho Code § 18-1508A(1)(a). The information specified that Fulton committed sexual battery by having lewd and/or lascivious contact with and/or upon the body of a minor, to-wit: by manual-genital contact. Fulton entered a plea of not guilty, and the case proceeded to trial. The jury found Fulton guilty of sexual abuse of a child amounting to lewd and lascivious conduct; however, the district court entered a judgment of conviction for the charge of sexual battery of a minor child. Fulton timely appeals.

# II.

## ANALYSIS

We determine the issue of whether there was a fatal variance between the information and three jury instructions to be dispositive and therefore do not find it necessary to address the remaining issues, albeit recognizing some appear to have merit. Fulton argues for the first time on appeal that he was denied his right to due process because a fatal variance existed at his trial between the information, which included specific language that Fulton had committed sexual battery of a minor child by engaging in manual-genital contact with the child, and the jury instructions setting forth the elements of sexual battery of a child (Jury Instruction No. 7) as well as the statutory definition of lewd and lascivious acts (Jury Instruction No. 4 and 10). The State contends the claimed variance was not fatal because the instructions did not change the nature or degree of the crime with which Fulton was charged and that the claimed variance did not leave Fulton open to the risk of double jeopardy.

Ordinarily, Idaho Criminal Rule 30(b)(4) prevents a party from claiming that a jury instruction was erroneous unless the party objected to the instruction prior to the start of jury deliberations. *State v. Southwick*, 158 Idaho 173, 181, 345 P.3d 232, 240 (Ct. App. 2014). However, even without a contemporaneous objection at trial, claims of instructional error may be reviewed for the first time on appeal under the fundamental error doctrine. *Id.* Accordingly, even though Fulton did not object at trial to the jury instructions, we will analyze Fulton's fatal variance claim under the three-prong fundamental error test.

In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental

error.  The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error:  (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings.  *Id.* at 226, 245 P.3d at 978.  We will address each prong in turn.

A.      **Unwaived Constitutional Right**

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review.  *State v. Alvarez*, 138 Idaho 747, 750, 69 P.3d 167, 170 (Ct. App. 2003).  Jury instructions should be congruent with the charging document in regard to the means by which the crime was allegedly committed.  *State v. Hooper*, 145 Idaho 139, 146-47, 176 P.3d 911, 918-19 (2007).  A variance may occur when the jury instructions do not match the charging document.  *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011).  When due process is violated, a variance is fatal.  *See De Jonge v. Oregon*, 299 U.S. 353, 362 (1937); *State v. Cariaga*, 95 Idaho 900, 904, 523 P.2d 32, 36 (1974).  In other words, a determination of whether a variance is fatal depends on whether the basic functions of the pleading requirement have been met.  *State v. Windsor*, 110 Idaho 410, 417, 716 P.2d 1182, 1189 (1985).

A charging instrument meets the basic functions of the pleading requirement if it fairly informs the defendant of the charges against which he or she must defend and enables him or her to plead an acquittal or conviction in bar of future prosecutions for the same offense.  *United States v. Bailey*, 444 U.S. 394, 395 (1980).  Application of this standard is a two-step process.  *State v. Gas*, 161 Idaho 588, 592, 388 P.3d 912, 916 (Ct. App. 2016).  First, the court determines whether there was a variance between the charging document and the given jury instructions.  *Id.*  If a variance exists, the court examines whether it is fatal (i.e., whether it rises to the level of prejudicial error necessitating reversal of the conviction).  *Id.*  A variance requires reversal only when it deprives the defendant of his or her right to fair notice or leaves him or her open to the risk of double jeopardy.  *Windsor*, 110 Idaho at 417-18, 716 P.2d at 1189-90; *State v. Sherrod*, 131 Idaho 56, 59, 951 P.2d 1283, 1286 (Ct. App. 1998).  Thus, a variance between the facts alleged in the pleading instrument and the proof at trial generally will not be deemed fatal to the prosecutor's case unless there has been such a variance as to affect the substantial rights of the accused.  *Windsor*, 110 Idaho at 417, 716 P.2d at 1189; *State v. Colwell*, 124 Idaho 560, 565, 861

3

P.2d 1225, 1230 (Ct. App. 1993). A review of whether the defendant was deprived of his or her right to fair notice requires the court to determine whether the record suggests the possibility that the defendant was misled or embarrassed in the preparation or presentation of his or her defense. *Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

The parties agree a variance existed between the charging instrument and the jury instructions. However, they disagree over whether the variance is fatal. Fulton was charged by information with committing sexual battery by having lewd and/or lascivious contact with and/or upon the body of a minor, a child sixteen or seventeen years of age, to-wit: sixteen years old, by manual-genital contact. Jury Instruction No. 4 provided in pertinent part:

> It is a crime for any person at least five (5) years of age older than a minor child who is sixteen (16) or seventeen (17) years of age, who, with the intent of arousing, appealing to, or gratifying the lust, passion, or sexual desires of such person, minor child, or third party, to: (a) commit any lewd or lascivious act or acts upon or with the body or any part or any member thereof of such minor child including, *but not limited to*, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the same or opposite sex, *or who shall involve such minor child in any act of explicit sexual conduct*.

(Emphasis added.) Jury Instruction No. 10 provided in pertinent part:

> As used in these jury instructions, the following words have the following meanings . . . B, "erotic fondling" *means touching a person's clothed or unclothed genitals or pubic areas*, developing or undeveloped genitals or pubic area if the person is a child, buttocks, *breasts if the person is a female child*, for the purpose of real or simulated overt sexual gratification or stimulation of one or more of the persons involved. . . . C, "explicit sexual conduct" means sexual intercourse, *erotic fondling*, erotic nudity, masturbation, sadomasochism, sexual excitement, or bestiality.

(Emphasis added.) Jury Instruction No. 7 provided:

> In order for the defendant to be guilty of Sexual Battery of a Child Amounting to Lewd and Lascivious conduct, the state must prove each of the following: (1) between July 31 and August 2, 2015; (2) in the state of Idaho; (3) the defendant Israel Fulton committed an act of manual-genital contact, *or any other lewd or lascivious act*, upon or with the body of D.B.; (4) the defendant engaged in such conduct with the specific intent of arousing, appealing to, or gratifying the lust, passion, or sexual desires of the defendant, of such child, or some other person; (5) D.B. was 16 or 17 years of age; and (6) the defendant was at least 5 years of age older than D.B.

(Emphasis added.) It is clear that the charging instrument does not match the jury instructions, constituting a variance. The charging document solely alleged Fulton committed one act of

4

manual-genital contact. The jury instructions provide that Fulton could be found guilty for "any other lewd or lascivious act upon or with the body of D.B." or other "act of explicit sexual conduct." Having determined there was a variance, we must now determine whether the variance was fatal.

A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Jones*, 140 Idaho at 49, 89 P.3d at 889; *Colwell*, 124 Idaho at 566, 861 P.2d at 1231. When a constructive amendment occurs, the defendant is deprived of fair notice and misled or embarrassed in the preparation or presentation of his defense. *Berger v. United States*, 295 U.S. 78, 82-83 (1935); *Windsor*, 110 Idaho at 418, 716 P.2d at 1190; *State v. Ormesher*, 154 Idaho 221, 223, 296 P.3d 427, 429 (Ct. App. 2012); *Wolfrum*, 145 Idaho at 47, 175 P.3d at 209.

In *State v. Day*, 154 Idaho 476, 480-81, 299 P.3d 788, 792-93 (Ct. App. 2013), this Court held that including the language "or any other lewd or lascivious act" in the jury instruction, despite Day being charged with committing lewd conduct by manual-genital contact, was a fatal variance because there was evidence that Day touched the victim's breast, which would have permitted the jury to find Day guilty of something other than lewd conduct by manual-genital contact. Similarly, in *State v. Montoya*, 140 Idaho 160, 166, 90 P.3d 910, 916 (Ct. App. 2004), we held that because the information charged Montoya with acts of manual-genital, oral-genital, and genital-genital contact, the inclusion of the language "or any other lewd or lascivious act" was erroneous, especially in light of the fact that there was evidence that the defendant kissed and touched the breasts of the victim.

In contrast, in *Ormesher*, the information alleged the defendant committed sexual abuse by touching a minor's breasts, while the jury instruction setting out the elements of the crime did not reference the alleged touching. *Id.* at 223-24, 296 P.3d at 429-30. Another jury instruction defined "sexual contact" as "any physical contact between the child and a person which is caused by the actor, or the actor causing the child to have self contact." *Id.* The Court concluded that the jury instructions were not consistent with the information and thus constituted a variance because the jury was allowed to find the defendant guilty based on any sort of sexual contact, not just the touching alleged in the information. *Id.* at 224, 296 P.3d at 430. However, the Court

5

determined that the variance was not fatal because the defendant did not show "he was misled or embarrassed in the preparation of his defense" as he offered a defense, through witness testimony, against the other factual scenarios of sexual contact discussed at trial that the jury could have used to convict him of sexual abuse. *Id.* at 224-25, 296 P.3d at 430-31.

Like in *Day* and *Montoya*, Fulton was charged with committing a sex crime by specific means (i.e., manual-genital contact). At trial, there was evidence that Fulton kissed the victim and touched her breasts. By including the language "any other lewd or lascivious act upon or with the body [of the victim]" in Jury Instruction No. 7 and "any act of explicit sexual conduct" in Jury Instruction No. 4, the trial court allowed the jury to convict Fulton based on evidence of the kissing and breast touching. Because the means by which the crime could have been committed set forth in the jury instructions does not match the charging document, the discrepancy here constitutes a variance.[1] In contrast to *Ormesher*, Fulton did not provide a defense against the other factual scenarios that could have been used to convict him; but rather, freely admitted to those instances of touching as part of his defense, something he may not have done had he known he was admitting to uncharged acts that could be the basis for a conviction.

Because the variance between the information and the jury instructions in this case left Fulton without notice of the crime he was defending against, his right to due process was violated. The information failed to place Fulton on notice of a need to present evidence or argument against the other factual scenarios that could have been used to convict him (i.e., kissing the victim and touching her breasts). Therefore, we conclude that the variance between the allegations of the information and the jury instructions was fatal. Accordingly, Fulton's unwaived constitutional right to due process was violated and the first prong of *Perry* is satisfied.

B.      **Plain Error**

Regarding prong two, Fulton argues that the failure to object was clearly not a strategic decision, as he gained "absolutely no strategic advantage by giving the jury an opportunity to convict him on uncharged conduct that does not meet the definition of lewd conduct." Fulton asserts that it clearly would not be a reasonable strategy to allow oneself to be convicted of

---

[1]     During deliberations, the jury asked the district court for a definition of "lewd and lascivious act." The district court provided the following definition: "Lascivious means wanton, lewd, lustful, licentious, libidinous, salacious, period. Lewd means licentious, lecherous, dissolute, sensual, debauched, impure, obscene, salacious, pornographic, period."

6

conduct not constituting the charged crime simply for the sake of potential appellate reversal. The State provides no argument regarding the second prong.[2]

To establish the second prong of *Perry*, the error must plainly exist without the need for any additional information outside the appellate record, including information as to whether the failure to object was a tactical decision. *Id.* at 228, 245 P.3d at 980. In *Day*, a similar variance existed. The charging document charged the defendant with having "manual to genital contact with [the victim] and/or caused [the victim] to have manual to genital contact with [the defendant]. *Id.* at 478, 299 P.3d at 790; *see also State v. Sutton*, 151 Idaho 161, 166, 2254 P.2d 62, 67 (Ct. App. 2011). The jury instructions provided that "in order for [the defendant] to be guilty . . . the State had to prove that . . . [the defendant] 'committed an act or acts of manual-genital contact or any other lewd or lascivious act upon or with the body' of the victim." *Day*, 154 Idaho at 478, 299 P.3d at 790. We concluded that the second prong of *Perry* was met because the record contained no indication that the defendant knew more about the laws than the State or the trial court or that the defendant was attempting to sandbag the court. We determined that to speculate that a defendant's attorney made a tactical decision to allow his client to be found guilty of conduct that did not constitute the crime charged, simply for the sake of a potential reversal on appeal, was not a reasonable strategy. *Id.* at 481, 299 P.3d at 793. Further, we noted that during closing argument the State argued to the jury that, pursuant to the jury instruction, the State had to prove that the defendant committed an act of manual-genital contact or any other lewd or lascivious act upon the body of the victim. The State argued it had proven this because it presented testimony from the victim that the defendant put his hand down the victim's bikini bottom as well as testimony from the victim's friend indicating the defendant stuck his hand inside the victim's bikini top and touched her breast. *Id.* at 482, 154 Idaho 476, 299 P.3d at 794. We determined that the error was clear from the record, and the failure to object was not a strategic decision. *Id.*

Similarly, the record here contains no indication that Fulton knew anymore about the laws than the State or the trial court, or that Fulton was attempting to sandbag. Indeed, during closing argument, the State argued to the jury that, pursuant to the jury instruction in this case, in order for Fulton to be guilty of sexual battery as charged, the State had to prove that Fulton

---

[2] We note that the State makes an argument regarding prong two; however, it only relates to the variance in the verdict form and not the variance in the elements instruction.

committed any other lewd or lascivious act upon the body of the victim or any other act of explicit sexual conduct, not limited to the enumerated acts. The State then asserted the jury could find the other acts Fulton committed, even without deciding the genital issue, constituted lewd and lascivious conduct. In addition, the State then reiterated that the State just had to prove that Fulton committed any lewd or lascivious act, not just manual-genital. To speculate that Fulton's failure to object simply for the sake of potentially obtaining an appellate reversal is not conduct of a reasonable trial strategist. Therefore, we conclude that information outside the record is not necessary to determine that Fulton's failure to object to the jury instructions was not a strategic decision, and the error is clear from the record. Thus, the second prong of *Perry* is satisfied.

## C.     Prejudicial Error

Last, *Perry* requires that Fulton demonstrate there is a reasonable possibility that the error affected the outcome of the trial. *Id.* at 226, 245 P.3d at 978. The variance here allowed a possibility that the jury found Fulton guilty solely on his contact with the victim's breast, which is contact for which Fulton was not charged in the information. The prosecutor even informed the jury that it could do so during closing argument, stating: "You can find the other acts that he committed, even without deciding the genital issue--that it was lewd and lascivious: sitting on his lap, fondling her breast, taking her bra off, kissing her." Accordingly, Fulton has demonstrated there is a reasonable possibility that the variance of this case affected the outcome of the trial. Thus, the third prong of *Perry* is satisfied. Whereas reversal is required due to the fulfillment of all three prongs of *Perry* on the fatal variance issue, we need not address the various other errors raised in this appeal.

## IV.

## CONCLUSION

We conclude the variance between the information and the jury instructions constituted a fatal variance amounting to fundamental error. Accordingly, Fulton's judgment of conviction is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge HUSKEY and Judge LORELLO **CONCUR**.