IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 45108

| STATE OF IDAHO, | ) | |
| | ) | **Filed: May 31, 2019** |
| Plaintiff-Respondent, | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| NAKOMA JAMES POWELL, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment of conviction for first degree arson, burglary, and being a persistent violator, affirmed.

Dennis A. Benjamin of Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Nakoma James Powell appeals from his judgment of conviction for first degree arson, burglary, and being a persistent violator. Powell argues: (1) that the district court erred in denying his motion for a mistrial and (2) that the elements instruction for first degree arson resulted in fundamental error because it included an uncharged alternative method for committing arson. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Powell with first degree arson, I.C. § 18-802, and burglary, I.C. § 18-1401, for a fire and theft that occurred at a flower store in Ada County. The State also

1

alleged that Powell is a persistent violator.  I.C. § 19-2514.  Powell exercised his right to a jury trial.

During trial, Powell moved for a mistrial after one witness testified that Powell's girlfriend asked the witness to lie, although she did not testify as to what she was asked to lie about.  The district court sustained Powell's objection to the testimony but denied his request for a mistrial.  Powell declined the district court's offer to give a curative instruction.  The jury subsequently found Powell guilty of first degree arson, burglary, and the persistent violator enhancement.  Powell appeals.

## II.

## STANDARD OF REVIEW

Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer.  The standard, more accurately stated, is one of reversible error.  Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion.  The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

Whether there was a variance between a charging instrument and the jury instructions is a question of law over which we exercise free review.  *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998).

## III.

## ANALYSIS

A.      **Motion for Mistrial**

Powell argues that the district court erred in denying his motion for mistrial, contending that although his objection to the testimony which formed the basis of his motion was sustained, he was nevertheless deprived of a fair trial.  The State responds that the district court's ruling that the testimony was inadmissible was incorrect and that, even if the ruling was correct, the district

court did not err in denying Powell's request for a mistrial because the testimony was not prejudicial. We hold that Powell has failed to show reversible error in the denial of his motion for mistrial.

In criminal cases, motions for mistrial are governed by I.C.R. 29.1. A mistrial may be declared upon motion of the defendant when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). As our standard of review indicates, our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion and whether the incident constituted reversible error. *Urquhart*, 105 Idaho at 95, 665 P.2d at 1105.

The incident that triggered the mistrial motion in this case was a statement made by a witness who was a friend of Powell's girlfriend. The challenged statement was made by the friend during the following exchange:

| | |
|---|---|
| [State]: | All right. So let's talk about your relationship with [Powell's girlfriend] now. Has it changed at all? |
| [Friend]: | Yes. |
| [State]: | Why has it changed? Why has your relationship with her changed? |
| [Friend]: | Because of multiple reasons. |
| [State]: | Can you give me one of those reasons? |
| [Friend]: | She wanted me to lie. |
| [State]: | How did that happen? |
| [Friend]: | She had called me and wanted me to lie. |

In response to the friend's last statement, Powell stated: "I move to strike and move for a mistrial." The district court responded: "Well, I don't think it is appropriate to go into this. We might as well have a discussion. We will take the afternoon recess and we will have a discussion." During the recess, the district court asked the prosecutor why he was "going into this" because the testimony was hearsay. The prosecutor then argued why the testimony did not constitute hearsay. The district court thereafter sustained the "objection"[1] and denied the request

---

[1]    It is unclear on what basis the district court sustained the objection beause Powell did not state an evidentiary basis for his objection; rather, Powell only moved to strike the testimony and moved for a mistrial. Although the parties debate the admissibility of the testimony Powell moved to strike, including whether the district court properly characterized the testimony as hearsay, we need not resolve that dispute because, even if the statement was inadmissible as the

3

for a mistrial "because the witness ha[d] been stopped." The district court advised Powell that it would "be glad to entertain a further instruction." Powell declined the district court's offer, explaining there was "no unringing the bell" because the friend already testified that Powell's girlfriend asked the friend to lie. The district court reiterated that it was not granting a mistrial, noting the jury did not know what Powell's girlfriend asked the friend to lie about.

Although the district court did not strike the complained of testimony as Powell initially requested, the district court indicated that it did not think it was "appropriate to go into this." Consistent with this statement, which the district court made in the jury's presence prior to taking a recess to discuss the issue, the State did not ask any additional questions on the topic following the recess. Instead, Powell began his cross-examination once the recess was over. Moreover, Powell declined a curative instruction to ameliorate any prejudice that might have resulted from the friend's statement that Powell's girlfriend asked the friend to lie. On appeal, Powell's prejudice argument centers on the circumstantial nature of the evidence against Powell and his contention that his girlfriend's request that the friend lie "could only lead [the jury] to conclude that [the friend's testimony] was the truth" and Powell's girlfriend "knew it." Powell's girlfriend's alleged request that the friend lie was not, however, the centerpiece of the State's case against Powell, nor was the request referenced again in light of the district court's ruling regarding its admissibility. Rather, the State's case against Powell, while circumstantial, was strong and was based upon the testimony of numerous witnesses.

The owner of the store testified that she had three employees at the time of the fire, including Powell's girlfriend, and that all three employees had keys to the business. The owner had seen Powell present when his girlfriend closed the shop and had occasionally hired Powell for deliveries. Powell's girlfriend was laid off the day of the fire, but did not return her key, and told another store employee that she could not find it.

Prior to testifying that Powell's girlfriend asked the friend to lie, the friend testified that she had been at Powell's house on the evening of the fire visiting with Powell's girlfriend,

district court ruled (for the reasons discussed herein), the fact that the jury heard the statement did not constitute reversible error.

4

Powell, Powell's neighbor, and another individual. The friend testified that, during that time, Powell had a red gas can and left with the neighbor in the neighbor's truck. The friend testified that, when Powell returned, he smelled like gas and went inside and changed his clothes. Another individual who was present at Powell's house testified that he also saw Powell leave with a red gas can and return approximately forty-five minutes later. Powell's girlfriend later gave that witness a ride home, during which time they saw the fire in the area of the store.

The neighbor who left with Powell also testified. The neighbor testified that he gave Powell a ride because Powell said he had a friend who needed gas. Powell brought the gas can with him and the neighbor stopped at a service station so Powell could fill it up. The neighbor then drove Powell to an area near the store and Powell left on foot. Although the neighbor did not see where Powell went, he testified that, when Powell returned to the truck approximately ten minutes later, he was walking fast and said "Let's go." When the neighbor asked Powell what he had done, Powell responded by looking at the neighbor and smiling. The neighbor also testified that he believed he saw heat waves coming from the direction of the business. In closing, Powell argued that the case hinged on the *neighbor's* testimony (not the friend's) and asked the jury to conclude the neighbor was not credible.

The State also presented evidence that the store was locked when the fire department responded to the reported fire, that the fire was a result of arson, and that gasoline was used as an accelerant to start the fire. When the investigating detective interviewed Powell, he consented to a search of his shed where the detective quickly located a red gas can near the front of the shed.

Given the strength of the State's evidence, the friend's comment that Powell's girlfriend asked the friend to lie did not have a continuing impact on the trial. Therefore, the district court's denial of Powell's motion for mistrial does not constitute reversible error.

## B. Jury Instruction

Powell argues, for the first time on appeal, that the district court's elements instruction for first degree arson constituted fundamental error because it included an uncharged alternative method for committing arson, thereby creating a fatal variance between the charging document and the elements instruction. The State responds by first questioning whether the fundamental error standard applies in this case since there was an objection to the instruction, albeit one made by the State and not Powell. The State alternatively argues that, even if the fundamental error

5

standard applies, Powell has failed to meet his burden under that standard. We hold that under any standard, Powell has failed to demonstrate he is entitled to relief based on the arson instruction.

The arson instruction at issue on appeal is Instruction No. 7, which was proposed by the district court. Instruction No. 7 reads:[2]

> In order for [Powell] to be guilty of Arson in the First Degree, the state must prove each of the following:
> 1. On or about March 20, 2015
> 2. in the state of Idaho
> 3. the defendant NAKOMA JAMES OAID POWELL willfully,
> 4. by fire or explosion,
> 5. damaged
> 6. a structure, whether occupied or not, in which persons are normally present or
> 7. any real or personal property whether the property of the actor or another, and the defendant did so with the intent to harm any person with a legal or financial interest in the property or to obtain any financial gain for the defendant or another person.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find [Powell] guilty.

The State objected to Instruction No. 7 because the information charging Powell only included the theory set forth in paragraph six, and paragraph seven related to a different theory of the case.[3] The district court responded that the theory in paragraph seven was also within the first degree arson statute and that the evidence presented supported inclusion of that theory in Instruction No. 7. When asked for input, Powell did not object to Instruction No. 7 but, instead, only asked the district court to remove the lesser included second degree arson instruction because he wished to proceed on first degree arson alone.

---

[2]   There are some minor word changes between the district court's original proposed instruction and the final instruction set forth above. Those differences do not impact the issue on appeal.

[3]   The State's first degree arson charge alleged, in relevant part, that Powell "willfully and unlawfully by fire or explosion damage[d] a structure in which persons are normally present."

We first address the State's assertion that, although Powell claims Instruction No. 7 resulted in fundamental error, the fundamental error standard may not apply because there was an objection to the instruction. Appellate court authority to review trial errors is generally limited to instances where the alleged error has been preserved by an objection. *See State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2010). The United States Supreme Court explained the reason for this as follows:

> This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "'sandbagging'" the court--remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.

*Puckett v. United States*, 556 U.S. 129, 134 (2009). The fundamental error doctrine, however, permits consideration of *unobjected-to* errors that are alleged to have violated a defendant's due process rights to a fair trial in a fair tribunal. *Perry*, 150 Idaho at 224, 245 P.3d at 976. A defendant raising a claim of fundamental error must persuade the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Although Powell did not object to Instruction No. 7, the State did object. Moreover, the State's objection to the instruction was based on the same argument Powell raises on appeal as to why the instruction was erroneous, *i.e.*, the instruction included a theory not alleged in the charging document. Thus, the district court had the opportunity to consider and resolve whether the instruction was proper in light of the variance. Because the district court actually addressed the issue now before this Court, the fundamental error exception to the general objection requirement seems to have no application to this case.[4]

---

[4]     Idaho Supreme Court precedent indicates the invited error doctrine has no application because Powell did not propose Instruction No. 7 or expressly concur in the district court's

Absent application of the fundamental error exception, Powell would be required to demonstrate there was a fatal variance between the charging document and Instruction No. 7. Powell's argument, however, is solely predicated on the fundamental error standard. Although Powell recites legal principles related to constructive amendments and variances, he does not apply them to the facts of this case. Those principles demonstrate he is not entitled to relief.

Our task in resolving whether there was a fatal variance is two-fold. *State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). First, we must determine whether there is a variance between the information used to charge Powell with first degree arson and the instructions presented to the jury. *See id.* Second, if a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction, *i.e.*, whether the variance is fatal. *Id.* A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Jones*, 140 Idaho at 49, 89 P.3d at 889; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). When a constructive amendment occurs, the defendant is deprived of fair notice and misled or embarrassed in the preparation or presentation of his or her defense. *Berger v. United States*, 295 U.S. 78, 82-83 (1935); *State v. Ormesher*, 154 Idaho 221, 223-25, 296 P.3d 427, 429-31 (Ct. App. 2012); *Wolfrum*, 145 Idaho at 47, 175 P.3d at 209.

The State concedes there was a variance between the charging document and Instruction No. 7, but argues the variance was not fatal. We agree. The variance at issue did not result in Powell being charged with a crime of a greater degree or different nature. More importantly, there is no basis to conclude that Powell was deprived of fair notice and misled or embarrassed in the preparation or presentation of his defense because the variance issue was expressly discussed in the trial court and Powell never claimed his defense was impaired by inclusion of

---

decision to include it. *See State v. Adamcik*, 152 Idaho 445, 476-77, 272 P.3d 417, 448-49 (2012) (concluding invited error did not foreclose defendant from challenging a jury instruction because the defendant did not state that he concurred with the court's proposed instruction nor did he himself request the instruction).

the additional uncharged theory as part of Instruction No. 7. Indeed, inclusion of the additional theory appears to be entirely consistent with part of Powell's defense. During closing, Powell asked the jury to consider whether other individuals had a motive to burn the store. One individual who Powell suggested had a motive was the store's owner because the store was not "doing well" and the store owner had collected insurance proceeds following the fire. Powell also argued that other prior employees could have been disgruntled and started the fire and that law enforcement failed to investigate the alibis of those individuals. The uncharged alternate theory reflected in paragraph seven of Instruction No. 7 would be *consistent* with Powell's alternate perpetrator arguments rather than impair his defense. As such, Powell has failed to show Instruction No. 7 resulted in a fatal variance.

Even if the fundamental error standard applies to the issue involving Instruction No. 7, Powell's argument fails under prong two of that standard for reasons similar to those set forth above. Prong two of the fundamental error standard requires Powell to show that the error plainly exists, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision. *See Perry*, 150 Idaho at 228, 245 P.3d at 995. Powell's only argument on this prong is that "there could be no tactical reason to fail to object and permit the jury to convict upon an uncharged offense" because there was an "obvious defense to the arson count, as charged." According to Powell, the "obvious defense" was that the store was not a structure where persons are "normally present" because the store was closed at the time of the fire. Setting aside whether the defense Powell asserts was "obvious" or even legally viable, the record is clear that the decision to object *was* tactical. This is not a circumstance where the failure to object could be attributable to a claimed lack of preparation or ignorance such that no tactical decision was made. Rather, the variance in Instruction No. 7 was explicitly discussed, yet Powell did not object to the instruction or claim any prejudice resulting from it. The only reasonable conclusion that is clear from the record is that Powell elected not to object for tactical reasons, and those reasons are evidenced in his closing argument. Thus, Powell fails to satisfy prong two of the fundamental error standard. As a result, we need not address the other prongs of fundamental error.

Whether we directly apply the legal standards applicable to variances or review Powell's variance challenge to Instruction No. 7 through the lens of fundamental error, Powell has failed to meet his burden of showing he is entitled to any relief based on the instruction given.

## IV.

## CONCLUSION

The incident that gave rise to Powell's motion for mistrial did not have a continuing impact on the trial that would amount to reversible error. Powell's instructional error claim fails under variance principles and under fundamental error review. Accordingly, Powell's judgment of conviction for first degree arson, burglary, and being a persistent violator enhancement is affirmed.

Chief Judge GRATTON and Judge BRAILSFORD, **CONCUR**.